IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 2014-CV-2680

SHANE WHITTLE, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF
MARLEY COFFEE LLC,

      Plaintiffs,

v.

ROHAN MARLEY,
CEDELLA MARLEY,
JAMMIN' JAVA CORPORATION,
HOPE ROAD MERCHANDISING, LLC,
FIFTY-SIX HOPE ROAD MUSIC LIMITED,
MARLEY COFFEE ESTATE LIMITED,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Jeffrey S. Vail
THE LAW OFFICE OF JEFF VAIL LLC
5299 DTC Blvd., Suite 1101
Greenwood Village, CO 80111
Tel. (303) 800-8237
Fax. (303) 800-8237
ATTORNEY FOR PLAINTIFFS

Dated:  September 30, 2014.

# TABLE OF CONTENTS

NATURE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

GENERAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

FIRST CLAIM FOR RELIEF
(Violation of 18 U.S.C. § 1962, Racketeer Influenced and Corrupt Organizations Act) . . . . . . 26

SECOND CLAIM FOR RELIEF
(Violation of 15 U.S.C. § 1114, Lanham Act Trademark Infringement) . . . . . . . . . . . . . . . . . . 31

THIRD CLAIM FOR RELIEF
(Breach of Fiduciary Duty) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

FOURTH CLAIM FOR RELIEF
(Violation of C.R.S. § 18-4-401, *et seq.*, Civil Theft) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

FIFTH CLAIM FOR RELIEF
(Civil Conspiracy) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

DEMAND FOR JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

"Don't gain the world and lose your soul, wisdom is better than silver or gold."

- *Robert Nesta "Bob" Marley*

Plaintiff Shane Whittle, individually and derivatively on behalf of Marley Coffee LLC, for his Complaint against Defendants Rohan Marley, Cedella Marley, Jammin' Java Corp. ("Jammin' Java"), Hope Road Merchandising, LLC ("Hope Road Merchandising"), Fifty-Six Hope Road Music Limited ("56 Hope Road"), and Marley Coffee Estate Limited ("Marley Coffee Estate") (collectively, "Defendants"), states as follows:

## I.   NATURE OF ACTION

1.      Shane Whittle and Rohan Marley, the son of the late reggae music legend Robert Nesta Marley p/k/a Bob Marley, entered into a partnership to sell premium coffee products branded after the name and likeness of Rohan Marley.   The two partnered in this venture beginning in 2007 (the "Marley Coffee Venture") and formed Marley Coffee LLC in 2009.  While Rohan Marley contributed primarily his name and likeness to the company, Shane Whittle made significant capital contributions and loans, and provided his entrepreneurial creativity, vision and business experience over several years in exchange for 30% ownership in the venture.  Once the venture started gaining traction with retail distributors and global media, however, Rohan Marley along with his sister Cedella Marley and the Defendant entities forced Plaintiffs out of the venture and stole the brand Mr. Whittle had helped to build and launch in the retail marketplace.  Today, Jammin' Java, the original "Marley Coffee" licensee, is a publicly traded company doing business under the name "Marley Coffee."  Together, the various Marley

brands gross approximately one Billion dollars per year in sales[1], making the estate of Bob Marley arguably the richest of any deceased musician.  Millions of that revenue comes from Marley-branded coffee and tea products developed and owned in part by Plaintiff Shane Whittle, and yet Mr. Whittle has been left waiting in vain for any return on his investment.  As outlined below, Defendants, all members of the Marley family and associated entities, engaged in a pattern of racketeering activity, trademark infringement, breach of fiduciary duty, civil theft, and civil conspiracy directly causing Mr. Whittle and Marley Coffee LLC substantial financial harm.

## II.   PARTIES

2.     Plaintiff Shane Whittle is an individual, a commonwealth citizen and resident of Barbados.  His address is High Street, Bridgetown, BB11128, Barbados, West Indies.

3.     Mr. Whittle is a founder and member of Marley Coffee LLC, a Delaware limited liability company.   Mr. Whittle brings these claims in his individual capacity, and also derivatively on behalf of Marley Coffee LLC.   The other members of Marley Coffee LLC include Defendants Rohan Marley and Hope Road Merchandising, as well as non-parties Leif Martinoff and Andrew King.

4.     Mr. Whittle currently owns a 29% membership interest in Marley Coffee LLC, and has been a member of the company at all times relevant to the allegations contained in this Complaint.  Pursuant to the company's operating agreement, his approval is required of all management decisions of the company, including all decisions related to intellectual property. This derivative action is not a collusive attempt to confer jurisdiction on this Court that it would otherwise lack, as this Court would have jurisdiction over this matter even if Mr. Whittle were

---

[1] *See* http://nypost.com/2012/04/15/the-billion-dollar-rasta/

only asserting his individual claims.  Pursuant to Fed. R. Civ. P. 23.1(b)(3) and Del. Code. Ann. Title 6, § 18-1001, in an effort to obtain the desired action from the company, Mr. Whittle sent a demand letter to the controlling members of Marley Coffee LLC—Defendants Rohan Marley and Hope Road Merchandising—on January 18, 2013, but received no response.  Additional efforts to compel the company to bring this action are unlikely to succeed because, in order to bring this action Marley Coffee LLC would need to secure the consent of that company's controlling members, Defendants Rohan Marley and Hope Road Merchandising (and, in turn, that entity's co-Defendant director Cedella Marley), to bring suit against themselves.  Because the majority members of Marley Coffee LLC face personal liability for the claims asserted herein, they are unable to evaluate these derivative claims in a disinterested manner, and accordingly, any further demand would be futile.  Mr. Whittle will fairly and adequately represent the interests of Marley Coffee LLC and its additional non-party members Andrew King (4% membership interest) and Leif Martinoff (1.38% membership interest) (Whittle, King and Martinoff collectively the "Minority Members") in this action as their economic interests are aligned.

5.    Defendants Rohan Marley and Cedella Marley are children of Bob Marley.  Through Defendants Hope Road Merchandising and 56 Hope Road in which they are each owners and directors, along with their brother David Nesta Marley p/k/a Ziggy Marley, they manage the substantial intellectual property rights derived from Bob Marley's estate.

6.    Defendant Rohan Marley is an individual and resident of New York.  Plaintiff does not know his exact address at this time, but upon information and belief he resides in New York City.  Rohan Marley is the chairman of the board and a shareholder of Jammin' Java, and a

member and manager of Marley Coffee LLC, Marley Coffee Estate, Hope Road Merchandising and 56 Hope Road.  As outlined in this Complaint, Rohan Marley transacts business within the State of Colorado, and Plaintiffs' claims arise directly from these transactions.

7.     Defendant Cedella Marley is an individual and resident of Florida.  Her address is 12501 Crescent Way, Miami, Florida.  Cedella Marley is a member and manager of Hope Road Merchandising and 56 Hope Road.  As outlined in this Complaint, Cedella Marley transacts business within the State of Colorado, and Plaintiffs' claims arise directly from these transactions.

8.     Defendant Jammin' Java is a Nevada corporation, with its headquarters and principle place of business located at 4730 Tejon Street, Denver, Colorado.  Jammin' Java does business under the name "Marley Coffee" through a license initially issued by Marley Coffee LLC, and now purportedly issued by 56 Hope Road.

9.     Defendant Hope Road Merchandising is a Florida limited liability company with its principle place of business located at 100 West Cypress Creek Road, Suite 700, Ft. Lauderdale, Florida.   As outlined in this Complaint, Hope Road Merchandising transacts business in the State of Colorado, and Plaintiffs' claims arise directly from these transactions.

10.     Defendant 56 Hope Road is a Bahamian international business company with its official address at Aquamarine House, Cable Beach, Nassau, Bahamas.   56 Hope Road's principle place of business is located at 56 Hope Road, Kingston, Jamaica (the former residence of Bob Marley).  As outlined in this Complaint, 56 Hope Road transacts business within the State of Colorado, and Plaintiffs' claims arise directly from these transactions.

11.    Defendant Marley Coffee Estate is a Jamaican limited liability company with its headquarters located at 4730 Tejon Street, Denver, Colorado. As outlined in this Complaint, Marley Coffee Estate transacts business within the State of Colorado, and Plaintiffs' claims arise directly from these transactions.



**Figure 1: Organizational Chart of Parties**
**(Key: Blue = Plaintiffs; Red = Defendants; Gray = Relationships)**

12.    Defendants 56 Hope Road and Hope Road Merchandising are *alter egos* of each other for reasons including:

(a)         The two entities share unified ownership and management by Defendants Rohan Marley and Cedella Marley, which structure

facilitated the breaches of fiduciary duty, theft, fraud, and tax evasion described herein;

(b)     Hope Road Merchandising acts as the agent of 56 Hope Road and signs on its behalf on licensing contracts, including on the purported licensing agreement with Jammin' Java;

(c)     The assets of the two entities are comingled, all profits are ultimately received by their overlapping owners and managers, and the entities are not genuinely distinct. For example, as outlined below, Hope Road Merchandising accepted ownership in Marley Coffee LLC in exchange for *56 Hope Road* assigning the US trademarks for "Marley Coffee" to Marley Coffee LLC;

## III.   JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, 18 U.S.C. § 1962, and 15 U.S.C. § 1114. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a). Plaintiffs' federal and state law claims arise from the same events and transactions, involve substantially identical issues of fact and law, and are so related to each other that they form part of the same case or controversy under Article III of the United States Constitution.

14.     This Court has personal jurisdiction over Defendants Rohan Marley, Cedella Marley, 56 Hope Road and Hope Road Merchandising and Marley Coffee Estate as each has regularly transacted business within the State of Colorado. Rohan Marley is the chairman of the board and a shareholder in Jammin' Java, with its headquarters located in Denver, Colorado. Through their family holding companies Hope Road Merchandising and 56 Hope Road, for which Rohan and Cedella Marley are managers and members, these Defendants transact business within Colorado through their business relationship with Jammin' Java. Rohan Marley uses his control over and management of Marley Coffee Estate to sell premium Jamaican Blue Mountain

Coffee beans to Jammin' Java in Colorado.  Additionally, Marley Coffee Estate's CEO Balram Vaswani works out of the Jammin' Java offices in Denver, Colorado.  Here, Plaintiffs' claims arise directly out of these extensive and ongoing business contacts each Defendant has with the District of Colorado.

15.     This Court also has personal jurisdiction over Defendant Jammin' Java, which serves as the nexus of the entire Marley Coffee Venture.  *See* **Figure 1**, *supra*.  Jammin' Java transacts business in, has its headquarters in, and has its principle place of business in Denver, Colorado.  Every Defendant in this case does business with Jammin' Java, and these claims arise directly from those business transactions.

16.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2).  As outlined in this Complaint, Plaintiffs' claims arise out of the operation of a multi-faceted coffee and beverage venture, the nexus of which is Jammin' Java, headquartered and operated in Denver, Colorado.  Additionally, Defendant Marley Coffee Estate is headquartered in Denver, Colorado.  Every other Defendant is either a director in Jammin' Java, does business with Jammin' Java, and/or is a member, manager, and agent of a Defendant that does business with Jammin' Java.  A substantial portion of the events and omissions that give rise to Plaintiffs' claims, including the conspiracy and many of the fraudulent schemes and communications outlined herein, occurred and were centered within the District of Colorado.  No other district has as substantial a relationship to these events and omissions as the District of Colorado, and no other district has personal jurisdiction over all Defendants.

## IV.  GENERAL ALLEGATION

### A.  The Marley Coffee Venture

17.    Plaintiff Shane Whittle and Defendant Rohan Marley conceived of the Marley Coffee Venture beginning in 2007.  The two agreed to participate in the venture to market premium coffee under the name and likeness of Rohan Marley.  In furtherance of this venture, on October 8, 2007, Shane Whittle filed and paid to trademark the term Marley Coffee (serial number 77298703) with the United States Patent and Trademark Office.  The venture first used the Marley Coffee mark in commerce in 2007.

18.    The venture's plan was to separate the venture into two entities: Marley Coffee LLC to hold the intellectual property of the venture and a separate retail distribution entity. Beginning in 2007, Mr. Whittle made substantial capital investments in and loans to the Marley Coffee Venture to finance the establishment of a coffee farm in Jamaica.   Mr. Whittle contributed funds to obtain a lease of a 52 acre coffee farm in Chepstowe, Portland in Jamaica's Blue Mountains, to purchase over 7,000 coffee plants and farm equipment, to pay staff to operate the farm, and to bring the farm up to organic standards within Jamaica.   Additionally, Mr. Whittle funded the filming of a documentary entitled "One Cup of Coffee"[2] to begin establishing Marley Coffee's authenticity and brand narrative.

19.    On February 28, 2008, Rohan Marley and Shane Whittle formed Marley Coffee, Inc., which was then renamed Jammin' Java Corp. on July 13, 2009.  Initially, Rohan Marley and Shane Whittle were the directors and majority owners of this company.

---

[2] *See* "One Cup of Coffee," available online at https://www.youtube.com/watch?v=IEJwyNZK9Z8 (part 1) and https://www.youtube.com/watch?v=MLyGIZ_JQnI (part 2).

20.     In early 2008, Rohan Marley convinced Mr. Whittle to abandon the Marley Coffee trademark in the U.S. as he preferred to have his family's holding company 56 Hope Road file the trademark application on behalf of the venture—something they had existing U.S. counsel experienced at doing.  Rohan Marley, also a director of 56 Hope Road, promised that in exchange 56 Hope Road would permanently assign all rights to the new mark to Marley Coffee LLC.   Agreeing to this arrangement, Mr. Whittle abandoned the Marley Coffee trademark application on May 3, 2008.  Then, on May 5, 2008, 56 Hope Road filed a trademark application for "Marley Coffee" in the United States.   Outside the United States, however, Mr. Whittle utilized his contacts with international trademark attorneys to directly register trademarks for "Marley Coffee" in the name of Marley Coffee LLC in the E.U., Japan, Jamaica, Canada, Australia, and Hong Kong.

21.     In 2009, Rohan Marley explained that his family wanted to participate more extensively in the Marley Coffee Venture, and promised to Mr. Whittle that making his family a partner would resolve any potential future conflict over use of the Marley Coffee name, as well as facilitate the use of Bob Marley's and other famous family members' accomplishments in the venture's marketing efforts.  Accordingly, in 2009 Shane Whittle, Rohan Marley and one of the Marley family holding companies, Hope Road Merchandising, formed Marley Coffee LLC to own the intellectual property and brand of the venture.  Mr. Whittle made significant capital contributions and loans to Marley Coffee LLC in exchange for 30% ownership (since diluted to 29%).  Rohan Marley contributed his name and likeness in exchange for 50% ownership, and Hope Road Merchandising received 20% ownership in confirmation and consideration of 56 Hope Road's assignment of all of its rights in the US trademark for "Marley Coffee" to Marley

Coffee LLC.  (Alternatively, Hope Road Merchandising's ownership interest was granted in exchange for issuing to Marley Coffee LLC a royalty-free, "worldwide exclusive, non-terminable" license to use this US mark.)

22.     Both Rohan Marley, as manager of Marley Coffee LLC and director of Hope Road Merchandising and 56 Hope Road, and Cedella Marley as director of Hope Road Merchandising and 56 Hope Road, repeatedly affirmed that Marley Coffee LLC was the owner of the "Marley Coffee" marks.  This was acknowledged in writing numerous times in documents signed by Rohan Marley after the formation of Marley Coffee LLC, including that "MCL (Marley Coffee LLC) owns the trademarks," and that these rights are "exclusive . . . [and] worldwide."

23.     Then, in 2010, Marley Coffee LLC entered into a 10-year licensing agreement granting Jammin' Java the right to use the Marley Coffee brand and trademarks in the distribution of coffee and related products within the hospitality sector.    Since this date, Jammin' Java has done business as "Marley Coffee."  As part of this licensing agreement, signed by Rohan Marley and Shane Whittle, the parties expressly affirmed that Marley Coffee LLC was the sole owner of the Marley Coffee trademarks, and that Jammin' Java Corp. would not, directly or indirectly through its officers (including Rohan Marley), attack or challenge the ownership or validity of Marley Coffee LLC's ownership of these trademarks.  As payment for this license, Jammin' Java was to transfer 10 million shares of its stock to Marley Coffee LLC over the term of the license.  At this point, Mr. Whittle resigned his position with Jammin' Java and continued to work for the company as a business and licensing consultant.

24. Additionally, as part of this licensing agreement, Jammin' Java transferred to Marley Coffee LLC the lease of the Jamaica coffee farm, all associated equipment and coffee crops, and other branding efforts performed on behalf of the Marley Coffee Venture.

25. Over the next few years, Jammin' Java and the Marley Coffee brand grew rapidly from just over $1,000 in sales in 2011 to approximately $10 million in sales in 2014. Jammin' Java, now a publicly traded company, raised over $10 million, purchased another coffee services company, and expanded into multiple distribution channels. Mr. Whittle continued to work actively on behalf of the Marley Coffee Venture, including developing and exploring licensing deals with Alexander Schärf & Söhne GmbH, Marley Coffee Chile, Marley Coffee UK, and a joint venture with Viva Beverages Inc. operating as Marley Beverage Company.

**B.      Defendants Steal Marley Coffee Venture From Plaintiffs**

26. However, in October 2012, Mr. Whittle discovered that Defendants were closing ranks to wrongfully exclude Plaintiffs and claim sole ownership of the Marley Coffee Venture.

27. In 2011, Plaintiff Shane Whittle and Defendants attempted to negotiate a buy-out of Mr. Whittle's ownership of Marley Coffee LLC to allow the Marley Family and Defendant entities to assume full control of the Marley Coffee Venture. However, the two sides were unable to reach any agreement. Only *after* these negotiations broke down, Defendants began to claim that 56 Hope Road, and not Marley Coffee LLC, was the actual owner of not only the domestic trademark it initially registered, but also the international trademarks registered by Marley Coffee LLC.

28. Despite previously written agreements and Jammin' Java's SEC filings stating that Marley Coffee LLC "owns 'Marley Coffee' and related trademarks," on September 19,

2011, Defendants began to claim in SEC filings by Jammin' Java that 56 Hope Road actually owned all Marley Coffee trademarks, and that 56 Hope Road had only granted an oral, non-exclusive, terminable license to Marley Coffee LLC to use these marks.

29.     Additionally, without informing Shane Whittle, Defendants improperly, surreptitiously, and in contravention of Marley Coffee LLC's operating agreement transferred *all* of Marley Coffee LLC's trademarks and brand rights to 56 Hope Road *without any consideration*.  In so doing, Defendants stole the core assets of Marley Coffee LLC; deprived Marley Coffee LLC of all revenues that should have been derived from current and future licensing deals; and deprived Shane Whittle of any return on his 29% ownership interest in Marley Coffee LLC and significant capital investment in and loans to the Marley Coffee Venture.

30.     Defendants then improperly, without payment or consideration, and without informing Shane Whittle, cancelled the licensing agreement between Marley Coffee LLC and Jammin' Java on September 13, 2012.  As a result, Marley Coffee LLC has been deprived of at least 10 million shares of Jammin' Java stock that should have been paid under this agreement (with a value of over $4 million), 3 million of which have been issued but are exclusively controlled by Rohan Marley, rather than Marley Coffee LLC.  On the *same day*, September 13, 2012, 56 Hope Road, through its directors Rohan and Cedella Marley, then issued a fifteen year license agreement to Jammin' Java to use the Marley Coffee brand and trademarks in exchange for payment to 56 Hope Road of 3% of net sales generated through use of the brand.  While these actions had no negative effect on the value of Jammin' Java stock, they have resulted in 56 Hope

Road earning hundreds of thousands of dollars in licensing fees from Jammin' Java that should have been paid to Marley Coffee LLC.

31.     Following Defendants' improper transfer of the Marley Coffee trademarks, 56 Hope Road also proceeded to license the Marley Coffee trademarks to Viva Beverages (now operating as "Marley Beverage Company" and marketing "Marley's Mellow Mood" teas and "Marley's One Drop" Blue Mountain Coffee), Stüssy Japan (selling branded Marley Coffee products in Japan), and Alexander Schärf & Söhne GmbH (to open Marley Coffee-branded retail coffee shops in Europe).  Despite the fact that each of these relationships was initiated by Shane Whittle on behalf of Marley Coffee LLC and leveraged trademarks owned by Marley Coffee LLC, Plaintiffs were wholly excluded from these partnership deals and have received none of the economic benefit that should have flowed to Marley Coffee LLC.

### C.     Defendants Steal The Marley Coffee Farm

32.     Further, in February 2011, and without informing Marley Coffee LLC or Shane Whittle, Rohan Marley formed a new entity in Jamaica, Marley Coffee Estate, in which Rohan Marley is a 25% owner.  Without any consideration, or the authorization of Marley Coffee LLC or Shane Whittle, Rohan Marley transferred all of Marley Coffee LLC's farm assets, including its farm lease and thousands of established coffee plants, to Marley Coffee Estate.

33.     Rohan Marley then used these assets, which he claimed were now owned by Marley Coffee Estate, to raise additional funding for the coffee farm from third parties including Clifton Mount Coffee Estate Limited, Balram Vaswani, and the former professional heavyweight-boxing champion Lennox Lewis.

34.     The Marley Coffee Estate operating agreement claims to also list Shane Whittle as a member and manager of the company, yet Mr. Whittle was not informed of its creation and has not signed the operating agreement.  However, when Mr. Whittle learned that he had been designated an owner and manager of this entity, he requested information about the operations and revenues of Marley Coffee Estate to which he would be entitled.  His requests were repeatedly ignored.  To date, Marley Coffee Estate has refused to provide to Mr. Whittle *any* information about the company in which they claim he is a member and manager.

35.     Marley Coffee Estate continues to operate and sell coffee under the "Marley Coffee" trademark in Jamaica—which is owned by Marley Coffee LLC—without permission. Since 2011, Marley Coffee Estate has sold approximately $300,000 annually in coffee beans owned by Marley Coffee LLC to Jammin' Java, which sales are expected to continue indefinitely.  To date, neither Mr. Whittle nor Marley Coffee LLC has been paid any in compensation for the assets taken by Marley Coffee Estate, has not been paid any profits from Marley Coffee Estate, and has not been paid any licensing fee for Marley Coffee Estate's use of the "Marley Coffee" trademark in Jamaica owned by Marley Coffee LLC.

36.     Incredibly, despite stealing the assets of Marley Coffee LLC and failing to make any effort to license its trademarks, the Marley Coffee Estate operating agreement—signed by Rohan Marley in February 2011—again confirms in writing that all of the Marley Coffee trademarks "are owned by Marley Coffee LLC."

**C.**     **Defendants Engaged In A Pattern Of Racketeering Activity**

37.     As outlined below, Defendants engaged in an ongoing pattern of hundreds of predicate acts of racketeering as defined in 18 U.S.C. § 1961, through which they stole Plaintiffs' share of the Marley Coffee Venture:

**i.     Transportation of Stolen and Counterfeit Goods**

38.     From 2011 to present, Defendants engaged in the interstate and international transport of stolen goods including trademarks, coffee, and coffee products bearing stolen and counterfeit marks in violation of 18 U.S.C. §§ 2314 and 2320.

39.     In September 2012, Defendants Rohan Marley, Cedella Marley and 56 Hope Road wrongfully transferred ownership of Marley Coffee LLC's trademarks to 56 Hope Road in the Bahamas without permission of Marley Coffee LLC, stealing these critical assets and moving them offshore.

40.     From 2012 to present, Defendant Jammin' Java made at least *weekly* shipments totaling approximately $10 million worth of coffee products bearing counterfeit marks that belong to Marley Coffee LLC.  These stolen and counterfeit goods were sold to wholesale purchasers throughout the United States, Canada, South America, and Asia.  These transfers, totaling well over 100 shipments to date, are ongoing and are expected to continue indefinitely in the amount of $10 million or more per year.

41.     From 2011 to present, Defendant Marley Coffee Estate transferred, at least quarterly, a total of approximately $1 million in coffee beans owned by Marley Coffee LLC from its farm in Jamaica to Jammin' Java in the United States.  These transfers are ongoing and are expected to continue indefinitely in the amount of over $300,000 per year.

### ii.   Transfer of Funds Derived From Criminal Activity

42.   Defendants also engaged in the interstate and international transfer of funds in excess of $10,000 derived from criminal activity, including theft, in violation of 18 U.S.C. § 1957.

43.   From 2011 to present, Marley Coffee Estate transferred, at least quarterly, funds totaling approximately $1 million obtained from the sale of coffee beans stolen from Marley Coffee LLC.   Upon information and belief, each transfer was in excess of $10,000.   These transfers were made from Jammin' Java's bank accounts in Colorado to Marley Coffee Estate's bank accounts in Jamaica and elsewhere.   These transfers are ongoing and are expected to continue indefinitely in the amount of over $300,000 per year.

44.   From 2012 to present, Jammin' Java made weekly transfers totaling approximately $10 million obtained from the sale of coffee products bearing trademarks stolen from Marley Coffee LLC.   These transfers, totaling well over 100 to date, were made from the bank accounts of wholesale purchasers located throughout the United States, Canada, South America, and Asia to Jammin' Java's bank accounts in Colorado.   Upon information and belief, most such transfers were in excess of $10,000.   These transfers are ongoing and are expected to continue indefinitely in the amount of $10 million or more per year.

45.   Additionally, upon information and belief, from 2012 to present, 56 Hope Road has transferred hundreds of thousands of dollars in revenues into its bank accounts in the United States from purported licensees' bank accounts in Japan (Stüssy Japan), Europe (Schärf & Söhne GmbH), and the United States and Canada (Viva Beverages/Marley Beverage Company) derived from the licensing of trademarks stolen from Marley Coffee LLC.

### iii. Money Laundering – Transfer of Assets to Evade Taxes

46. Defendants engaged in money laundering in violation of 18 U.S.C. § 1956.

47. Because Rohan Marley, Cedella Marley and Hope Road Merchandising are United States citizens, the stock they were to receive through the licensing agreement between Jammin' Java and Marley Coffee LLC would be immediately taxable as income once received.

48. Defendants sought to improperly evade this tax by illegally shifting their licensing income offshore to 56 Hope Road, a Bahamian company. Defendants Rohan and Cedella Marley and Hope Road Merchandising accomplished this evasion by stealing the trademarks of Marley Coffee LLC and replacing the licensing agreement between Marley Coffee LLC and Jammin' Java with the new purported licensing agreement between 56 Hope Road and Jammin' Java. According to Jammin' Java's independently audited financials, these trademarks and branding are worth millions yet they were surreptitiously transferred to 56 Hope Road, a Bahamian limited liability company owned by Defendants Rohan and Cedella Marley, *without any consideration*.

49. One of the purposes of this theft and wrongful transfer was to illegally evade United States taxes Defendants would have otherwise owed in the United States on licensing income derived from these trademarks.

### iv. Wire Fraud – Ownership of Trademarks

50. Defendants Rohan Marley, Cedella Marley, Hope Road Merchandising, 56 Hope Road and Jammin' Java committed repeated acts of wire fraud in violation of 18 U.S.C. § 1343 in order to conceal their theft of Marley Coffee LLC's trademarks from Plaintiffs and customers.

51.     On September 19, 2011, Jammin' Java utilized the United States wires to file its Form 10-Q through the SEC's EDGAR system.  This filing falsely stated that 56 Hope Road owned the Marley Coffee trademarks, and that Marley Coffee LLC held only a "non-exclusive" and "terminable" license to these marks.  This filing was signed by Jammin' Java's CEO Brent Toevs, and directly contradicted Jammin' Java's previous SEC filings which admitted that Marley Coffee LLC owned these marks.  These false representations were made with the express purpose of setting the stage for the later theft of Marley Coffee LLC's trademarks and transfer to 56 Hope Road.   Customers of Jammin' Java reasonably relied on these material misrepresentations in purchasing Jammin' Java coffee products, and the Minority Members reasonably relied on these misrepresentations in not bringing this action sooner.

52.     On October 4, 2012, Jammin' Java utilized the United States wires to file its Amended Form 10-Q through the SEC's EDGAR system.  This filing attached a licensing agreement between Jammin' Java and 56 Hope Road dated September 13, 2012, signed by both Rohan and Cedella Marley as managers of Hope Road Merchandising acting as licensing agent for 56 Hope Road, and Anh Tran, President of Jammin' Java.  The parties to this agreement made numerous material misrepresentations therein, including that Marley Coffee LLC had voluntarily terminated its licensing agreement with Jammin' Java and that 56 Hope Road owns all Marley Coffee trademarks.  The parties to this agreement expressly and fraudulently represented that 56 Hope Road owns the "Marley Coffee Stir It Up & Design" trademarks in Australia, Canada, the E.U., Hong Kong, Japan, Jamaica, and the United States.  In fact, the parties to this agreement knew that Marley Coffee LLC owned all of these trademarks.  These material misrepresentations were made with the express purpose of facilitating the theft of

Marley Coffee LLC's trademarks, and were reasonably relied upon by Jammin' Java's customers in purchasing Jammin' Java coffee products and by licensees in agreeing to licensing deals with 56 Hope Road.

53.     On December 21, 2012, Jammin' Java utilized the United States wires to file its Form 10-Q through the SEC's EDGAR system.  This filing fraudulently stated that Marley Coffee LLC had previously held only a "terminable license," and that Marley Coffee LLC had "waived the 30-day notice requirement for termination" of its licensing agreement with Jammin' Java.  Jammin' Java knew these representations were false when made, as evidenced by the fact that its previous SEC filings had expressly stated that Marley Coffee LLC "owns 'Marley Coffee' and related trademarks."  Jammin' Java made these material misrepresentations with the intent of covering up the theft of Marley Coffee LLC's trademarks and its wrongful cancellation of its licensing agreement with Marley Coffee LLC from Plaintiffs and Minority Members, upon which they reasonably relied.  Additionally, customers reasonably relied on these representations in purchasing Jammin' Java coffee products.

54.     On May 5, 2013, Jammin' Java utilized the United States wires to file its Form 10-K through the SEC's EDGAR system.  This filing fraudulently stated that 56 Hope Road had previously granted only a "terminable" license to Marley Coffee LLC, and added the material misrepresentation that "[Jammin' Java] and MCL entered into a letter agreement dated as of September 13, 2012 terminating the MCL License Agreement."  Jammin' Java knew these representations were false when made, and made these false representations with the intent of covering up the theft of Marley Coffee LLC's trademarks and its wrongful cancellation of its licensing agreement with Marley Coffee LLC from Plaintiffs and Minority Members, as well as

from customers, both of whom reasonably relied on these misrepresentations in not bringing this action sooner and in purchasing Jammin' Java coffee products.

55.     Jammin' Java continues to perpetuate this fraud, repeatedly utilizing the United States wires to file Form 10-Qs on June 14, 2013, September 12, 2013, December 16, 2013, June 16, 2014 and its Form 10-K on May 16, 2014 through the SEC's EDGAR system each materially misrepresenting that "Fifty Six Hope Road owns . . . the [Marley Coffee] Trademarks." Jammin' Java knew that each of these statements was false when made and made these false representations with the specific intent of covering up the theft of Marley Coffee LLC's trademarks and its wrongful cancellation of its licensing agreement with Marley Coffee LLC from Plaintiffs and Minority Members, as well as from customers, both of whom reasonably relied on these representations in purchasing Jammin' Java coffee products, and which Plaintiffs relied upon in not bringing this action sooner.

56.     Upon information and belief, each of these fraudulent filings were sent electronically by Jammin' Java officers Brent Toevs or Anh Tran from their California (until mid-2012) or Colorado (mid-2012 to present) offices to Jammin' Java's corporate lawyer David Loev at his office at 6300 West Loop South, Suite 280, Bellaire, Texas, and were then filed with the EDGAR system electronically from there.   As a result of each of these fraudulent misrepresentations of material facts, customers have been damaged because they purchased stolen and/or counterfeit products, and the Plaintiffs and Minority Members have been damaged because these false representations have facilitated Defendants covering up the theft of Marley Coffee LLC's assets and delayed the assertion of these claims.

**v.        Wire Fraud – Issuance of Stock Certificates**

57.        Additionally, Defendants Rohan Marley and Jammin' Java engaged in wire fraud in violation of 18 U.S.C. § 1343 in order to conceal his theft of Jammin' Java stock from Plaintiff Shane Whittle.

58.        Pursuant to the 2010 licensing agreement between Marley Coffee LLC and Jammin' Java, Jammin' Java was to grant 1 million shares of its stock to Marley Coffee LLC each year of the licensing agreement.   By the time Jammin' Java claimed that licensing agreement was terminated in September 2012, it acknowledged that it owed 3 million shares of stock to Marley Coffee LLC, 29% of which would have passed through to Plaintiff Shane Whittle.

59.        In December 2012, Mr. Whittle requested that Jammin' Java issue a share certificate granting him his portion of these shares.   Rohan Marley, acting individually and as Chairman of the Board of Jammin' Java, responded from Jammin' Java's office at 4730 Tejon Street, Denver, Colorado by email to Mr. Whittle at his office in British Columbia utilizing the United States' wires on December 7, 2012 in which Rohan Marley fraudulently stated that the certificate could not be issued to Mr. Whittle because "I told you there is a tax issue" that must be solved "before anything can be issued."   In fact, Rohan Marley knew that there was no tax issue preventing issuance of the share certificate to Mr. Whittle—rather, Rohan Marley made this material misrepresentation with the specific intent to block the issuance of these shares to keep these shares for himself and prevent dilution of the value of his shares in Jammin' Java.

60.        Mr. Whittle reasonably relied on this misrepresentation of material fact by not immediately taking further action to obtain issuance of the shares owed to him.   Jammin' Java

continues to refuse to issue these shares to Mr. Whittle, and as a result of this fraud he has been wrongfully deprived of at least 870,000 shares of Jammin' Java stock.

### vi.    Wire Fraud – Transfer of Trademarks

61.    Defendant Rohan Marley and 56 Hope Road committed wire fraud in violation of 18 U.S.C. § 1343 by using the United States wires to fraudulently induce the transfer of trademarks.

62.    In October 2012, when Shane Whittle learned that all of the trademarks owned by Marley Coffee LLC had been stolen and transferred to 56 Hope Road, he contacted Marley Coffee LLC's Canadian trademark attorney, Jeffrey Vicq, to ask why he had transferred the Canadian trademark to 56 Hope Road.   In response, Mr. Vicq stated that "the TMs were transferred from Marley Coffee, LLC to Fifty-Six Hope Road Music Limited via a document executed by Rohan last fall; we were provided with a signed transfer agreement and instructions to file the change in title by counsel to Fifty-Six this past March."

63.    The Fall 2011 transfer document and instructions "executed by Rohan [Marley]" referenced by Mr. Vicq are in the possession of Defendants and unavailable to Plaintiffs. However, upon information and belief, in that document Rohan Marley fraudulently communicated to Mr. Vicq via email from Jammin' Java's former office at 800 Wilshire Blvd., Suite 200, Beverly Hills, California to Mr. Vicq's office in Vancouver, British Columbia using the United States wires that Marley Coffee LLC had authorized the transfer of its trademarks. Rohan Marley knew this representation was false when signed.   In fact, he signed the Second Amendment to the Trademark License Agreement between Jammin' Java and Marley Coffee LLC on December 1, 2011 *after this misrepresentation* wherein he again confirmed "MCL

[Marley Coffee LLC] owns the trademarks."  Rohan Marley made this false representation that Marley Coffee LLC had transferred all of its trademarks to 56 Hope Road with the express intent of facilitating the theft of these trademarks.

64.     Mr. Vicq, then acting as an attorney for Marley Coffee LLC, reasonably relied on this false representation of material fact when he filed the paperwork transferring Marley Coffee LLC's Canadian trademark to 56 Hope Road.  As a result, Marley Coffee LLC has been damaged by theft of this trademark and loss of licensing income it should have received.

**vii.     Wire Fraud – Nondisclosure of Trademark Transfer**

65.     Additionally, Defendants Rohan and Cedella Marley and Hope Road Merchandising committed wire fraud in violation of 18 U.S.C. § 1343 by using the United States wires to fraudulently conceal the transfer of trademarks from Plaintiffs.

66.     Over dozens of emails, Rohan Marley repeatedly failed to disclose to Shane Whittle that he had transferred all of Marley Coffee LLC's trademarks to 56 Hope Road, despite a legal duty to disclose this information as a fellow member and manager of the LLC.  Similarly, despite numerous email communications with Shane Whittle, neither Rohan nor Cedella Marley—all members, managers, and agents of both Hope Road Merchandising and 56 Hope Road—ever disclosed this transfer to Plaintiff.  As agents, members, and managers of Hope Road Merchandising and 56 Hope Road, Rohan and Cedella Marley owe fiduciary duties to both Marley Coffee LLC and directly to Shane Whittle.

67.     For example, on April 23, 2012, Shane Whittle wrote from his office in British Columbia to Rohan Marley at Jammin' Java's (then) office at 800 Wilshire Blvd., Suite 200, Beverly Hills, California stating that they could transfer the trademarks to 56 Hope Road only if

the deal "makes sense."  Rohan Marley—who at this point had already signed the paperwork to transfer all of the trademarks from Marley Coffee LLC to 56 Hope Road—fraudulently concealed this fact from Mr. Whittle for the purpose of concealing and facilitating this theft, and in his email response on April 23, 2012 stated instead that "your time and investment is why we're building the biz."  This email utilized the United States' wires.

68.    Mr. Whittle reasonably relied on Rohan Marley's fraudulent nondisclosure of the material fact that Marley Coffee LLC's core assets had already been stolen in continuing to work for the Marley Coffee Venture rather than immediately pursuing legal action.  Both the Minority Members and Marley Coffee LLC have been damaged by this fraudulent nondisclosure as it concealed the theft of Marley Coffee LLC's core assets.

69.    On or about January 13, 2013 Plaintiffs sought in writing Defendants' Rohan Marley's and Hope Road Merchandising's participation in alternative dispute resolution, pursuant to Section 12.15 of the Marley Coffee LLC operating agreement.  On April 25, 2013 Defendants responded in writing, denying the existence of the alternative dispute resolution provision, and refusing to agree to participate in arbitration, thereby waiving their right to enforce that provision.

### FIRST CLAIM FOR RELIEF
**(Violation of 18 U.S.C. §§ 1962(c) and 1962(d) – By All Plaintiffs Against All Defendants)**

70.    Plaintiffs incorporate by reference all of the allegations in this Complaint as if fully rewritten herein.

71.    Each Defendant is a "person" within the meaning of 18 U.S.C. § 1962.

72.    Together, Defendants form an association-in-fact enterprise comprised of individuals and legal entities (the "Marley Family Enterprise").  The Marley Family Enterprise

shares a common purpose to promote and sell Marley-branded coffee beverages.  The Marley Family Enterprise consists of familial, financial, and legal relationships between each of the Defendants in their association with the enterprise.  The Marley Family Enterprise has pursued this common purpose and shared these relationships over a substantial period of time, from at least 2011 and continuing into the present.

73.     In classic RICO fashion, the Marley Family Enterprise is organized around the Marley family structure, with Bob Marley as the deceased patriarch, and his elder children Rohan, Ziggy and Cedella Marley in charge of the Enterprise's affairs, while soliciting input and assistance from many other younger children of Bob Marley.  This enterprise structure is amenable to hierarchical and consensual decision-making, with many decisions being made consensually among the Marley children, and ultimate decisions made by the elder children.  This structure is separate from the racketeering activity in which it engaged, and is not itself a legal entity.  The Marley Family Enterprise is also separate and distinct from the individual RICO persons who are the Defendants in this case.

74.     The Marley Family Enterprise has been engaged in, and its activities affected interstate and foreign commerce.  The enterprise farms coffee in Jamaica, purchases coffee from other countries, roasts coffee in Canada, USA, the UK and Jamaica, sells coffee products into retail markets throughout the United States and internationally, holds intellectual property in the Bahamas, and licenses that intellectual property throughout the Americas, Europe, and Asia.  As outlined in this Complaint, Defendants' enterprise furnished the vehicle for the commission of an unlawful pattern of racketeering activity.

75.    Defendants Rohan Marley and Cedella Marley directed and participated, both directly and indirectly through Defendant entities Jammin' Java, Hope Road Merchandising, 56 Hope Road and Marley Coffee Estate where they were board members, officers, shareholders, members, and managers in the conduct and management of the Marley Family Enterprise's affairs through the pattern of racketeering activity outlined above.  Additionally, Jammin' Java CEO Brent Toevs, its President Anh Tran, and its Chairman of the Board Rohan Marley participated in the conduct and management of the enterprise on behalf of Jammin' Java and themselves through the pattern of racketeering activity outlined above.

76.    Each Defendant engaged in a related and continuing pattern of racketeering activity in their management and conduct of the Marley Family Enterprise.  Defendants' racketeering activities, as outlined in this Complaint, share a common purpose—to force Plaintiffs out of their share of profits from the sales of Marley-branded coffee worldwide in order to keep it for themselves; have the same results—expanding the sales of Marley-branded coffee domestically and internationally without benefit to Plaintiffs; have the same participants—specifically the Defendants named in this case and their purported licensees; and have the same victims—Plaintiffs Shane Whittle, the other Minority Members Andrew King and Leif Martinoff, and Plaintiff Marley Coffee LLC, each of which have been deprived of assets and their rightful share of profits from the Marley Coffee Venture.  Additionally, thousands of retailers and hundreds of thousands of consumers have become victims of this scheme when they purchased stolen and counterfeit coffee products.  The pattern of racketeering activity of the Marley Family Enterprise is open-ended, has continued for at least four years, and is expected to continue and accelerate indefinitely into the future.

77.     The Marley Family Enterprise's pattern of racketeering activity includes repeatedly engaging in hundreds of separate acts of racketeering from 2011 to present in violation of 18 U.S.C. § 1962(c), as defined in 18 U.S.C. §1961, as outlined in Paragraphs 38 – 68, above.

78.     Each Defendant also agreed and conspired with each other in performing the overt acts listed above in furtherance of the Marley Family Enterprise's conspiracy to harm Plaintiffs in violation of 18 U.S.C. § 1962(d), including:

a.     Rohan Marley stole Marley Coffee LLC's trademarks as outlined in Para. 28 and 40; stole Marley Coffee LLC's farm assets as outlined in Para. 33; directed the transfer of over $1 million in stolen coffee beans to Jammin' Java as outlined in Para. 42; directed the enterprise's money laundering and tax evasion as outlined in Para. 46-49; and engaged in wire fraud as outlined in Para. 52 and 57-68; and engaged in the wrongful licensing of the marks owned by Marley Coffee LLC to numerous third-party licensors as outlined in Para 42-45.  Rohan Marley was a member to the agreements to commit these acts, and he joined this conspiracy knowing of the enterprise's intent to conduct or participate in the predicate acts outlined above toward the enterprise's common goal.

b.     Cedella Marley stole Marley Coffee LLC's trademarks as outlined in Para. 28 and 40; directed the enterprise's money laundering as outlined in Para. 46-49; directed the fraudulent concealment of the trademark transfers as outlined in Para. 65-68; engaged in wire fraud as outlined in Para. 52 and 65; and engaged in the wrongful licensing of the marks owned by Marley Coffee LLC to numerous third-party licensors as outlined in Para 42-45. Cedella Marley was a member to the agreements to commit these acts, and she joined this conspiracy knowing of the enterprise's intent to conduct or participate in the predicate acts outlined above toward the enterprise's common goal.

c.     Jammin' Java shipped over $10 million in goods it knew to be counterfeit as outlined in Para. 41; received over $1 million in coffee beans it knew to be stolen as outlined in Para. 42; transferred funds obtained through sales of counterfeit goods as outlined in Para.45; and engaged in wire fraud through communications by Chairman of its Board Rohan Marley, CEO Brent Toevs, and President Anh Tran as outlined in Paragraphs 50-60. Jammin' Java, as a corporation, and through its officers and board members

Brent Toevs, Anh Tran, and Rohan Marley, were all member to the agreements to commit these acts, and joined this conspiracy knowing of the enterprise's intent to conduct or participate in the predicate acts outlined above toward the enterprise's common goal.

d.     Hope Road Merchandising stole Marley Coffee LLC's trademarks as outlined in Para. 28 and 40; engaged in money laundering as outlined in Para. 46-49; and engaged in wire fraud as outlined in Paragraph 65.  Hope Road Merchandising was a member to the agreements to commit these acts, and it joined this conspiracy knowing of the enterprise's intent to conduct or participate in the predicate acts outlined above toward the enterprise's common goal.

e.     56 Hope Road stole Marley Coffee LLC's trademarks as outlined in Para. 28 and 40; engaged in money laundering as outlined in Para. 46-49; and engaged in the wrongful licensing and interstate transportation of stolen goods and marks owned by Marley Coffee LLC to numerous third-party licensors as outlined in Para 42-45.  56 Hope Road was a member to the agreements to commit these acts, and it joined this conspiracy knowing of the enterprise's intent to conduct or participate in the predicate acts outlined above toward the enterprise's common goal.

f.     Marley Coffee Estate stole Marley Coffee LLC's farm assets as outlined in Para. 33; transferred over $1 million in stolen coffee beans and funds derived from their sale, as outlined in Para. 42; and continues to infringe on Marley Coffee LLC's marks.  Marley Coffee Estate was a member to the agreements to commit these acts, and it joined this conspiracy knowing of the enterprise's intent to conduct or participate in the predicate acts outlined above toward the enterprise's common goal.

79.    Plaintiffs have been directly and proximately injured in their business and property as a result of the foregoing overt acts in furtherance of the conspiracy, and as a result of the racketeering acts outlined above, in an amount to be determined at trial.  As a result of Defendants' pattern of racketeering activity, Shane Whittle and Marley Coffee LLC have been deprived of license income from the use of the Marley Coffee brand and trademarks and deprived of income from their Jamaican farm operations.  Additionally, Plaintiff Shane Whittle has been deprived of any return on his ownership of and capital investment in and loans to

Marley Coffee LLC, deprived of millions of shares of Jammin' Java stock owed to him, and deprived of income from his several years of work on behalf of Marley Coffee LLC.

80.    Because Defendants Rohan Marley and Hope Road Merchandising are also members of Marley Coffee LLC, any benefit they might receive by payment of monies owed to Marley Coffee LLC must be disgorged and paid instead exclusively to the Minority Members.

WHEREFORE, Plaintiffs seek relief as set forth at the end of this Complaint.

**SECOND CLAIM FOR RELIEF**
**(Trademark Infringement and Counterfeiting, Violation of 15 U.S.C. § 1114 – By Plaintiff Marley Coffee LLC Against Defendants 56 Hope Road, Jammin' Java and Marley Coffee Estate)**

81.    Plaintiff incorporates all of the allegations in this Complaint as if fully rewritten herein.

82.    The trademarks "Marley Coffee," "Marley Coffee Stir It Up," and the image of the lion used by the Marley Coffee brand are valid, protectable trademarks within the United States and numerous international jurisdictions.

83.    Plaintiff Marley Coffee LLC is the rightful owner of each of these trademarks as they were either assigned to or registered by Marley Coffee LLC, and because the purported transfer of these trademarks to 56 Hope Road was invalid, in contravention of Marley Coffee LLC's operating agreement, and an *ultra vires* action by Defendant Rohan Marley.

84.    Defendants have and continue to use and *willfully infringe* each of Plaintiff's trademarks in connection with the sale of goods by using them in commerce without permission, and without compensating Plaintiff.  Jammin' Java has knowingly sold over $10 million worth of counterfeit coffee products labeled with these unauthorized marks, domestically and internationally, without the consent of Plaintiff.  Marley Coffee Estate has knowingly sold over

$1 million in coffee beans to Jammin' Java bearing the unauthorized mark, and continues to operate in Jamaica using the unauthorized mark as its name.  And 56 Hope Road has earned hundreds of thousands of dollars in licensing income by wrongfully and knowingly issuing licenses to use these marks to Jammin' Java and other licensees as outlined above.  These uses have deprived Plaintiff of the ability to exclusively license these marks, have deprived Plaintiff of income from these licenses, and have been in a manner that is likely to cause confusion, mistake, and deception of the public, ordinary consumers, and wholesale purchasers as to the source, sponsorship, affiliation, and approval of goods and entities bearing these marks.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined at trial.

85.     Because Defendants Rohan Marley and Hope Road Merchandising are also members of Marley Coffee LLC, any benefit they might receive by payment of monies owed to Marley Coffee LLC must be disgorged and paid instead exclusively to the Minority Members. Further, in addition to Plaintiff's lost profits, judgment should additionally enter against Defendants to disgorge the amount of profits made through the willful infringement of these marks.

WHEREFORE, Plaintiff seeks relief as set forth at the end of this Complaint.

### THIRD CLAIM FOR RELIEF
**(Breach of Fiduciary Duty – By All Plaintiffs Against Defendants Rohan Marley, Cedella Marley and Hope Road Merchandising)**

86.     Plaintiffs incorporate all of the allegations in this Complaint as if fully rewritten herein.

87.     As outlined in Paragraph 66, above, Defendants Rohan Marley, Cedella Marley and Hope Road Merchandising owe fiduciary duties of loyalty, care, candor, and good faith both to Marley Coffee LLC and also directly to Plaintiff Shane Whittle as a minority member.

88.     Defendants breached their fiduciary duties to Shane Whittle and Marley Coffee LLC by:

(a)     Self-dealing and failing to act in the best interest of Marley Coffee LLC by transferring the trademarks and brand owned by Marley Coffee LLC to 56 Hope Road without consideration to the company and without the required approval by Plaintiff Shane Whittle as a manager of Marley Coffee LLC;

(b)     Breach of their duty of loyalty by cancelling the licensing agreement between Marley Coffee LLC and Jammin' Java, and also by purportedly cancelling their claimed license between 56 Hope Road and Marley Coffee LLC;

(c)     Usurpation of business opportunities and breach of their duty of loyalty by coordinating licensing and/or joint venture deals for "Marley Coffee" with third parties including but not limited to Stüssy Japan, Viva Beverage Company and Alexander Schärf & Söhne GmbH through their holding company 56 Hope Road rather than through Marley Coffee LLC;

(d)     Breach of duty of loyalty, usurpation of business opportunity, and breach of duty of candor by entering into a new licensing agreement between 56 Hope Road and Jammin' Java at the exclusion of Plaintiffs, and failing to disclose this information to Plaintiffs;

(e)     Breach of duty of loyalty, duty of candor, and usurpation of business opportunities by transferring Marley Coffee LLC's farm assets to Marley Coffee Estate without consideration, permission, or disclosure.

(f)     Breach of duties of loyalty, candor, and good faith to Plaintiff and to Marley Coffee LLC by concealing the true nature of the trademark transfers, concealing the reasoning behind the their failure to issue Jammin' Java stock to Plaintiff, and by lying about the origin and nature of their business relationship.

89.     These breaches of fiduciary duty by Rohan Marley, Cedella Marley and Hope Road Merchandising directly and proximately caused Mr. Whittle and Marley Coffee LLC to

suffer substantial economic damages, in an amount to be determined at trial.  These damages

include the value of the trademarks and license agreement taken from Marley Coffee LLC

without consideration; the capital investment in and loans to the Marley Coffee Venture by

Shane Whittle; the value of Shane Whittle's time and effort devoted to Marley Coffee LLC; the

royalties improperly earned by 56 Hope Road but properly due to Marley Coffee LLC; the

payments and Jammin' Java stock due to Marley Coffee LLC and Shane Whittle under the

licensing agreement; the profits earned by and going concern value of Marley Coffee Estate; and

Plaintiffs' rightful share of the future earnings of the Marley Coffee Venture.

90.     Because Defendants Rohan Marley and Hope Road Merchandising are also

members of Marley Coffee LLC, any benefit they might receive by payment of monies owed to

Marley Coffee LLC must be disgorged and paid instead exclusively to the Minority Members.

WHEREFORE, Plaintiffs seek relief as set forth at the end of this Complaint.

### FOURTH CLAIM FOR RELIEF
**(Violation of C.R.S. § 18-4-401, *et seq*. - Civil Theft – By Marley Coffee LLC Against Defendants Rohan Marley, Cedella Marley, 56 Hope Road, Hope Road Merchandising and Marley Coffee Estate)**

91.     Plaintiff incorporates all of the allegations in this Complaint as if fully rewritten

herein.

92.     As outlined above, Defendants intentionally and knowingly obtained, retain, and

exercised control over Marley Coffee LLC's property without authorization, namely its brand,

trademarks, licensing agreement with Jammin' Java, its farm lease in the Jamaican Blue

Mountains, and farm assets and coffee crops by improperly transferring to 56 Hope Road and

Marley Coffee Estate without authorization, or with only *ultra vires* authorization.

93.     Defendants acted in a manner as to intentionally, knowingly, and permanently deprive Marley Coffee LLC of this property and things of value by bringing it solely under their control, excluding Plaintiffs from obtaining any information concerning this property and these things of value, and excluding them from all profits and business opportunities derived from this property and these things of value.

94.     As a result of Defendants' theft, Marley Coffee LLC has suffered economic damages in an amount to be determined at trial.

95.     Because Defendants Rohan Marley and Hope Road Merchandising are also members of Marley Coffee LLC, any benefit they might receive by payment of monies owed to Marley Coffee LLC must be disgorged and paid instead exclusively to the Minority Members.

WHEREFORE, Plaintiff seeks relief as set forth at the end of this Complaint.

### FIFTH CLAIM FOR RELIEF
**(Civil Conspiracy – By All Plaintiffs Against All Defendants)**

96.     Plaintiffs incorporate all of the allegations in this Complaint as if fully rewritten herein.

97.     Defendants, amongst themselves, agreed by words and conduct to accomplish unlawful goals as outlined above, including the goals to infringe upon Marley Coffee LLC's trademarks, to steal Marley Coffee LLC's trademarks and licensing agreement, to steal Marley Coffee LLC's farm assets, to breach fiduciary duties to Plaintiffs, and to wrongfully refuse transfer of stock and repayment of loans to Shane Whittle, all as part of their scheme to wrongfully exclude Plaintiffs from their share of profits under the Marley Coffee Venture and keep this share for themselves.

98.     Defendants performed one or more unlawful acts to accomplish these unlawful goals, including the acts outlined in Paragraphs 39-93, above.

99.     Defendants Rohan and Cedella Marley each have an independent personal stake in Defendants 56 Hope Road and Hope Road Merchandising, and Defendant Rohan Marley additionally has an independent personal stake in Defendants Jammin' Java and Marley Coffee Estate. Rohan and Cedella Marley stand to benefit personally from conspiring with these Defendant entities and conspired here for their own benefit.

100.    Plaintiffs were directly and proximately damaged by these wrongful acts of Defendants to accomplish these goals, and by Defendants' acts to accomplish these wrongful goals, as outlined in this Complaint, in an amount to be determined at trial.

101.    Because Defendants Rohan Marley and Hope Road Merchandising are also members of Marley Coffee LLC, any benefit they might receive by payment of monies owed to Marley Coffee LLC must be disgorged and paid instead exclusively to the Minority Members.

WHEREFORE, Plaintiffs seek relief as set forth at the end of this Complaint.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request judgment in their favor, and against Defendants, jointly and severally, as follows:

A.     Economic damages both to Marley Coffee LLC as the derivative Plaintiff and Shane Whittle as the individual Plaintiff in an amount to be proven at trial (with monies owed to Marley Coffee LLC disgorged from its Defendant-members and paid instead exclusively to the Minority Members);

B. In addition to economic damages, Plaintiff Marley Coffee LLC should be awarded all profits made by Defendants from their willful infringement of Plaintiff's marks pursuant to 15 U.S.C. § 1117(a), as well as statutory damages permitted under the Lanham Act;

B. Treble damages on Plaintiffs' civil RICO claim pursuant to 18 U.S.C. § 1964, Lanham Act claim pursuant to 15 U.S.C. § 1117, and Civil Theft claim pursuant to C.R.S. § 18-4-405;

C. Punitive damages in an amount to be determined at trial;

D. Reasonable attorney's fees and costs pursuant to 18 U.S.C. § 1964(c), 15 U.S.C. § 1117, and C.R.S. § 18-4-405;

E. Pre- and post-judgment interest at the highest allowable legal rates; and

F. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  September 30, 2014.

/s/ Jeffrey S. Vail

_____

Jeffrey S. Vail
THE LAW OFFICE OF JEFF VAIL LLC
5299 DTC Blvd., Suite 1101
Greenwood Village, CO 80111
Tel/Fax: (303) 800-8237
E-mail:  jvail@vail-law.com
ATTORNEY FOR PLAINTIFFS

Plaintiff's Address:
Shane Whittle
High Street
Bridgetown, BB11128
Barbados, West Indies