**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch**

Civil Action No. 14-cv-2680-RPM

SHANE WHITTLE, individually and derivatively
on behalf of Marley Coffee LLC,

      Plaintiff,

v.

ROHAN MARLEY,
CEDELLA MARLEY,
JAMMIN' JAVA CORPORATION,
HOPE ROAD MERCHANDISING, LLC,
FIFTY-SIX HOPE ROAD MUSIC LIMITED,
MARLEY COFFEE ESTATE LIMITED,

      Defendants.

## ORDER ON MOTIONS, DOCS. 22, 27, 29, & 38

      The story told by the Complaint begins in 2007 when Shane Whittle ("Whittle") and Rohan Marley ("Rohan"), the son of the late Robert Nesta Marley, a musical entertainer well known as Bob Marley, began a joint venture to market coffee under the name "Marley Coffee." In October 2007, Whittle filed a trademark application for that name in the U.S. Patent and Trademark Office ("USPTO"). Whittle and Marley planned to separate ownership of the intellectual property and the business operations by forming separate entities. A coffee farm was established in Jamaica.

      Whittle and Rohan formed a corporation, Marley Coffee, Inc., in February 2008. This corporation was renamed Jammin' Java Corporation on July 13, 2009. The intellectual property rights to Bob Marley's music and associated products are owned by Fifty-Six Hope

Road ("56 Hope Road"), a Bahamian international business company with its principal place of business in Kingston, Jamaica. Rohan and Cedella Marley ("Cedella"), a daughter of Bob Marley residing in Florida, are principals of 56 Hope Road. Management of the intellectual property owned by 56 Hope Road is the business of Hope Road Merchandising, a Florida limited liability company headquartered in Fort Lauderdale, Florida. Cedella is a managing member of Hope Road Merchandising and Rohan is a member. A brother of Rohan and Cedella, David Nesta Marley p/k/a Ziggy Marley, is also an owner and director of 56 Hope Road and Hope Road Merchandising.

Because 56 Hope Road had existing U.S. counsel experienced in intellectual property, Whittle accepted Rohan's suggestion that 56 Hope Road proceed with the Marley Coffee trademark registration on Rohan's promise that 56 Hope Road would assign all rights in the new trademark to Marley Coffee, LLC or, alternatively, grant Marley Coffee, LLC a royalty free non-terminable license to use the trademark. Accordingly, Whittle filed a notice of abandonment in the USPTO.

56 Hope Road registered Marley Coffee trademarks. The first registration certificate is for a service mark for coffee roasting and processing, issued April 20, 2010 with first use in commerce April 22, 2009. Another certificate, issued for coffee and coffee based beverages, was issued December 4, 2012 with first use in commerce April 22, 2009.

Whittle and Rohan formed Marley Coffee, LLC under the Delaware Limited Liability Company Act, with Rohan, Whittle, and Hope Road Merchandising as members pursuant to an Operating Agreement dated November 24, 2009. Hope Road Merchandising received a 20% member interest in consideration of the agreement to assign the Marley Coffee

trademarks to the LLC. Whittle invested $600, 000 for a 30% interest and Rohan had a 50% interest with no capital contribution. Whittle and Rohan were made joint managers.

The purpose of Marley Coffee, LLC as stated in paragraph 2.6 of the LLC's Operating Agreement is as follows[1]:

> The Company has been formed for the purpose of engaging in the business of manufacturing, advertising, and distributing coffee and such other activities as are agreed by the Members. It is understood and agreed that the Company shall have no right to utilize the name or likeness of Bob Marley without the prior consent of RM and the securing of a license from HRM.

The Marley name to be used with the coffee business was understood to be that of Rohan Marley, not his father.

Consistent with the joint venture plan, Marley Coffee, LLC signed a license agreement with Jammin' Java, effective March 31, 2010, permitting Jammin' Java to use the Marley Coffee trademarks in exchange for Jammin' Java issuing ten million shares of its common stock in increments of one million shares upon the execution of the agreement and one million shares upon each anniversary of the execution. That agreement was signed by Rohan as manager of Marley Coffee, LLC and Whittle as director of Jammin' Java.

Whittle then resigned from his position as a director of Jammin' Java and worked for that company under a consulting agreement. The coffee business flourished. Aiming to consolidate the coffee venture with their other businesses, the Marley family members attempted a buy-out of Whittle's interest in Marley Coffee, LLC. Negotiations failed.

---

[1] In the following provision, "RM" stands for Rohan Marley and "HRM" stands for Hope Road Merchandising.

56 Hope Road entered into a licensing agreement with Jammin' Java, effective August 7, 2012, signed by Rohan for the licensor.  The agreement contained the following language:

> This Agreement replaces and supersedes the license agreement dated March 31, 2010 under which the Licensor's former licensee, Marley Coffee, LLC, and Licensee have been operating since Licensee's first offering of MARLEY COFEE products (the "2010 License Agreement"), and the 2010 License Agreement is hereby terminated upon execution of this Agreement by the parties.

The license is for a term of 15 years with earned royalties of 3% of net sales generated from the products branded with the Marley Coffee trademarks.

In 2011 the physical coffee farm assets were placed in the ownership of Marley Coffee Estate, Limited a new entity in Jamaica formed in the same year by Rohan in which Rohan is a 25% owner and in which others have interests.  Although the operating agreement for Marley Coffee Estate lists Whittle as an owner and manager, he did not participate in the company's creation and had no prior knowledge of its formation or operation and was excluded from any information about it.  The Estate sells coffee beans to Jammin' Java and uses the Marley Coffee trademarks in Jamaica.

Marley Coffee, LLC holds 3 million shares of Jammin' Java stock earned under the March 31, 2010 license agreement.  It is not presently active in business and was made inactive for failure to pay certain fees to the State of Delaware.  It has since been revived by payment made in July 2015.

In essence, Whittle as plaintiff claims that the defendants have combined in a concerted and successful campaign to exclude him and Marley Coffee LLC from the fruits of the joint venture that he and Rohan began in 2007.

Whittle makes claims both for himself and as a derivative action on behalf of Marley Coffee, LLC. The defendants moved to dismiss all of the claims on the merits for insufficient pleadings.

Whittle requests relief for himself and for Marley Coffee, LLC as follows:

> A. Economic damages both to Marley Coffee LLC as the derivative Plaintiff and Shane Whittle as the individual Plaintiff in an amount to be proven at trial (with monies owed to Marley Coffee LLC disgorged from its Defendant-members and paid instead exclusively to the Minority Members);
>
> B. In addition to economic damages, Plaintiff Marley Coffee LLC should   be awarded all profits made by Defendants from their willful infringement of Plaintiff's marks pursuant to 15 U.S.C. § 1117(a), as well as statutory damages permitted under the Lanham Act;
>
> B [sic]. Treble damages on Plaintiffs' civil RICO claim pursuant to 18 U.S.C. §1964, Lanham Act claim pursuant to 15 U.S.C. § 1117, and Civil Theft claim pursuant to C.R.S. § 18-4-405;
>
> C. Punitive damages in an amount to be determined at trial;
>
> D. Reasonable attorney's fees and costs pursuant to 18 U.S.C. § 1964(c), 15 U.S.C. § 1117, and C.R.S. § 18-4-405;
>
> E. Pre- and post-judgment interest at the highest allowable legal rates;
>
> And
>
> F. Such other and further relief as the Court deems just and proper.

The defendants challenge Whittle's standing to assert Marley Coffee, LLC's claims derivatively under Delaware law. Although a statute gives apparent authority for any member of an LLC to bring a derivative action, *see* 6 Del. C. § 18-1001, the courts in Delaware apply that state's common law of corporations to determine standing in LLC litigation. *E.g., VGS, Inc. v. Castiel*, No. 17995, 2003 WL 723285, at *11 (Del. Ch. Mar. 10, 2003)("case law governing corporate derivative suits is equally applicable to suits on behalf of an LLC").

To have derivative standing, a plaintiff shareholder "must be qualified to serve in a fiduciary capacity as a representative of a class of persons similarly situated, whose interests are in plaintiff's hands and the redress of whose injuries is dependent upon his diligence, wisdom and integrity." *Katz v. Plant Indus, Inc.*, No. 6407, 1981 WL 15148, at *1 (Del. Ch. Oct. 27, 1981) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 542 (1949)). The interests of the individual and those of the corporation must be aligned. *See id.* In evaluating whether there is sufficient alignment of interests between the individual and the corporation, courts consider: (1) economic antagonism between the plaintiff and the corporation; (2) other litigation pending between the plaintiff and the defendant corporation; (3) the relative magnitude of plaintiff's personal interest as compared to his interest in the derivative action itself; (4) the plaintiff's vindictiveness toward the defendant corporation; and (5) the degree of support the plaintiff is receiving from the shareholders he purports to represent. *Katz v. Plant Indus., Inc.*, 1981 WL 15148, at *3. A strong showing of any one factor may be sufficient in itself to disqualify a derivative plaintiff. *See Emerald Partners v. Berlin*, 564 A.2d 670, 674 (Del. Ch. 1989).

The derivative claims in plaintiffs' prayer for relief are based on the allegation that Marley Coffee, LLC owns the Marley trademarks for coffee. That assertion is in conflict with Whittle's individual claims. Whittle agreed with Rohan that 56 Hope Road would register the

trademark based on Rohan's promise that it would be transferred to Marley Coffee, LLC or that a perpetual license to Marley Coffee, LLC to use the trademark would be granted. The breach of that promise is the principal claim of an injury to Whittle.

In paragraph A, Whittle asks that monies owed to Marley Coffee, LLC be disgorged from Rohan and Hope Road Merchandising and paid exclusively to him and the other minority members of the LLC. He claims that Marley Coffee, LLC has been deprived of the Jammin' Java stock that should have been paid under the 2010 license agreement and the 3 million shares which have been issued are controlled by Rohan, rather than Marley Coffee, LLC. Compl. at ¶ 59 ("In December 2012, Mr. Whittle requested that Jammin' Java issue a share certificate granting him his portion of these shares."). Whittle and the other two minority members of Marley Coffee LLC do not have individual interests in the LLC's property. *See* 6 Del. C. § 18-701 ("A limited liability company interest is personal property. A member has no interest in specific limited liability company property.").

The Marley Coffee, LLC Operating Agreement contains no obligation to distribute LLC property to its members. In fact, ¶7.2.3 of the Operating Agreement provides that no member shall have a right "to bring an action for partition of the Company's property or to compel any sale of all or substantially all of the Company's assets." Similarly, insofar as Whittle complains that he made a capital contribution of $600,000 to the formation of Marley Coffee, LLC and has not received any return for it, the Operating Agreement provides that, other than in the context of the LLC being liquidated or terminated, no member shall have the right "to have his paid Capital Contribution or any positive amount in his Capital Account repaid, or to withdraw or reduce his Capital Account, or any portion thereof." *Id.* at ¶7.2.2. Whittle does not have standing to pursue claims of Marley Coffee, LLC.

The Second Claim for Relief is dismissed as it is the claim of Marley Coffee, LLC. That is also the basis of dismissing the Fourth Claim.

The First Claim attempts to elevate the conspiracy claim into a violation of 18 U.S.C. § 1962, the federal Racketeer Influenced and Corrupt Organizations ("RICO") statute, and is brought by Marley Coffee, LLC derivatively and Whittle individually.  Excluding the contentions concerning trademark violations and other claims of injury to Marley Coffee, LLC, the Complaint is insufficient in the allegations of predicate criminal acts and a continuing operation of a criminal enterprise separate and distinct from the defendants themselves.  The conspiracy alleged in the Fifth Claim is not a criminal enterprise and is not a continuing operation.  The damages may be continuing but the actions of the conspirators are completed.

The viable claims for relief in the Complaint are the Third and Fifth Claims for Relief based primarily on a breach of fiduciary duty owed to Whittle by Rohan, aided and abetted by the other defendants, for their conduct in excluding Whittle from participation in the development of the coffee business contemplated by the joint venture agreements made in 2007 resulting in the loss of Whittle's investments and economic benefits that should have come from his membership in Marley Coffee, LLC.  The source of the fiduciary duty of Rohan to protect the interests of Whittle begins with their oral agreements and extends into the Operating Agreement of Marley Coffee, LLC.  The economic loss rule does not constrict this claim. Rohan in the exercise of authority claimed by him under the Operating Agreement must act pursuant to the implied covenant of good faith and fair dealing.  The Delaware statute requires it.

The aiding and abetting in the Third Claim can be considered a civil conspiracy in which all of the named defendants are alleged participants in a common plan formed after Whittle refused the attempt to buy out his interest in Marley Coffee, LLC.

Under Colorado's "long arm" statute, C.R.S. § 13-1-124, the commission of any tortious act within Colorado by a person or an agent submits the person to jurisdiction for any cause of action arising from the tortious act. The Colorado Supreme Court opinion in *Resolution Trust Corporation v. Heiserman*, 898 P.2d 1049, 1052 (Colo. 1995) held that a breach of fiduciary duty of due care or a breach of fiduciary duty of loyalty are tortious acts under the statute and a course of conduct from which a tacit agreement to act in concert may be sufficient to form a conspiracy.

Whittle has alleged in this case sufficient facts to show that all of the defendants had some participation in the scheme to push Whittle out of the joint venture with Rohan by refusing to assign the trademark to the LLC controlled by him and Rohan, putting the farm assets in Marley Coffee Estate and operating the coffee business through Jammin' Java Corp. with its headquarters in Colorado. The core of this case is that business. Its operations are in fulfillment of the alleged conspiracy and are therefore continuing tortious acts. The plaintiff has alleged that Marley Coffee Estate's CEO Balram Vaswani works out of Denver, Colorado.

The defendants other than Rohan and Jammin' Java challenged personal jurisdiction and have submitted affidavits and declarations showing an absence of any contacts with Colorado. The basis for denying their objections is their alleged participation in the conduct claimed to be a conspiracy to deprive the plaintiff of his investments and participation in the revenue derived from the business of Jammin' Java headquartered in Colorado.  These allegations are sufficient to support the assertion of personal jurisdiction at this intimal pleading stage of this case.

Because this Order dismisses the claims of Marley Coffee, LLC and narrows the claims asserted by the plaintiff, it is required that an Amended Complaint be filed to enable the defendants to answer the factual allegations to be made by Whittle individually.

Accordingly, it is ORDERED that

Defendant Jammin' Java Corp.'s Motion to Dismiss, Doc. 22, is GRANTED with respect to the Complaint's First, Second, and Fourth Claims, and DENIED with respect to the Complaint's Third and Fifth Claims.  It is further ORDERED THAT

Defendants Fifty-Six Hope Road Music Limited, Hope Road Merchandising, LLC, Cedella Marley, and Rohan Marley's Motion to Dismiss, Doc. 27, is GRANTED with respect to the Complaint's First, Second, and Fourth Claims, and DENIED with respect to the Complaint's Third and Fifth Claims.   It is further ORDERED THAT

Defendants Fifty-Six Hope Road Music Limited, Hope Road Merchandising, LLC, and Cedella Marley's Motion to Dismiss for Lack of Personal Jurisdiction, Doc. 29, is DENIED.  It is further ORDERED THAT

Defendant Marley Coffee Estate Limited's Motion to Dismiss for Lack of Personal Jurisdiction, Doc. 38, is DENIED.  It is further ORDERED THAT

Whittle shall file an Amended Complaint on or before September 10, 2015.

DATED: August 7, 2015

                                        BY THE COURT:

                                        s/Richard P. Matsch
                                        Richard P. Matsch,
                                        Senior District Judge